IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CLIFTON THOMAS McDANIEL,            §
                                    §
                        Plaintiff,  §
                                    §  Civil Action No. 3:11-CV-1221-D
VS.                                 §
                                    §
MICHAEL J. ASTRUE,                  §
COMMISSIONER OF SOCIAL              §
SECURITY ADMINISTRATION,            §
                                    §
                        Defendant.  §

MEMORANDUM OPINION

Plaintiff Clifton Thomas McDaniel ("McDaniel") brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Social Security Disability Insurance ("SSDI") benefits based on a finding that McDaniel was not disabled prior to the date last insured. For the reasons that follow, the Commissioner's decision is affirmed.

I

On June 9, 2009 McDaniel applied for a period of disability and disability insurance benefits, alleging he was unable to work due to an aneurysm of the aorta and cubital tunnel syndrome of the right arm. He alleged a disability onset date of May 25, 2007. His application for these benefits[1] was denied initially and on reconsideration. McDaniel

_____

[1]McDaniel also successfully applied for Title XVI supplemental security income.

requested a hearing before an administrative law judge ("ALJ"), which was held in May 2010.

The ALJ followed the five-step sequential process prescribed in 20 C.F.R. § 404.1520(a)(4).  At step one, she concluded that McDaniel had not engaged in substantial gainful activity since the alleged onset date.  At step two, the ALJ determined that since the alleged onset date of disability, McDaniel had the following severe impairments: mild degenerative joint disease of the lumbar spine, cubital tunnel syndrome of the right arm, minimal degenerative disc disease of the cervical spine, tobacco abuse, and atherosclerotic disease with aortic aneurysm.  At step three, the ALJ found that McDaniel does not have an impairment or combination of impairments that meets or medically equals any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ found that McDaniel has the following residual functional capacity ("RFC"):

> the claimant has the [RFC] to lift or carry twenty pounds occasionally, ten pounds frequently, stand and/or walk for six hours out of an eight-hour workday, sit for six hours out of an eight-hour workday. This individual must avoid crawling. This individual has the ability to reach, handle and finger on the right upper extremity frequently with no limits on the left upper extremity.  This individual can reach overhead with the right upper extremity occasionally with no limits on the left.  This individual must avoid concentrated extreme heat.  This individual retains the ability to perform jobs with detailed not complex instructions.

R. 22.  At step four, the ALJ found that McDaniel has been unable to perform any past

relevant work.  At step five, she found that, prior to February 21, 2009,[2] the date McDaniel turned 55 and his age category changed from "an individual closely approaching advanced age" to "an individual of advanced age," considering McDaniel's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed.  *Id.* at 24.  Thus McDaniel was not disabled within the meaning of the Act prior to February 21, 2009.  The ALJ therefore concluded that McDaniel's application for SSDI benefits must be denied because he was not under a disability within the meaning of the Act at any time through March 31, 2008, the date last insured.

McDaniel sought review by the Appeals Council, which denied his request, and the ALJ's decision became the final decision of the Commissioner.  McDaniel now seeks judicial review, arguing that the decision that he was not disabled prior to February 21, 2009 is not based on substantial evidence because, in determining the functional severity of his atherosclerotic disease, the ALJ failed to consider medical evidence of a second aneurysm located in his right common iliac artery as well as medical evidence of additional atherosclerotic disease in McDaniel's left common iliac artery and both his left and right internal iliac arteries.

---

[2]The ALJ refers to both February 20 and 21, 2009 as the date McDaniel's age category changed to individual of advanced age.  McDaniel turned 55 on February 21, 2009. Accordingly, the court will assume that the ALJ intended in all instances to refer to February 21, 2009.

II

A

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that

- 4 -

there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"
*Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for the court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

B

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2006). In determining whether an applicant is disabled, the ALJ follows a five-step sequential analysis. *See, e.g., Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the ALJ finds that the claimant is disabled or is not disabled at any step in the analysis, the analysis is terminated. *Id.* Under the five-step sequential inquiry the Commissioner considers whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant's impairment is severe, (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404.1520, Subpart P, Appendix 1, (4) the impairment prevents the claimant from doing past relevant work, and (5) the claimant cannot presently

- 5 -

perform relevant work that exists in significant numbers in the national economy.  *See*, *e.g*., *Leggett*, 67 F.3d at 563-64 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520(a)(4) (2011).  "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five."  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact.  The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)).  "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits."  *Ripley*, 67 F.3d at 557.  "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified."  *Id*.  Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced."  *Id*.  The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced.  *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

McDaniel contends that the ALJ's determination of his RFC is not based on substantial evidence because she failed to consider medical evidence of a second aneurysm located in his right common iliac artery as well as medical evidence of additional atherosclerotic disease in his left common iliac artery and both his left and right internal iliac arteries.

A

The ALJ requested at the conclusion of McDaniel's hearing that he provide his earlier health records, including those that documented the initial diagnosis of his aneurysm. She stated that she would be unable to render a favorable decision if McDaniel is "asymptomatic and there's no findings [related to the aneurysm]." R. 82. The only medical record dated prior to March 31, 2008 that McDaniel produced from the alleged period of disability is a December 21, 2007 report of an abdominal CT scan from Presbyterian Hospital in Albuquerque, New Mexico ("Presbyterian Hospital"). The report notes the presence of one aneurysm in McDaniel's lower abdominal aorta and another in his right iliac artery. But the report does not indicate any limitations or required follow-up. Nothing in the report suggests that the two aneurysms would limit his ability to work.

An October 31, 2009 report from Parkland Health and Hospital System ("Parkland") identifies atherosclerotic disease with distal abdominal aortic aneurysm with interval increase in size since prior study. The report also identifies aneurysmal dilation of the right

common iliac artery.  This report, from an ultrasound performed more than 1½ years after his March 31, 2008 date last insured, likewise does not indicate any limitations on his ability to work.

McDaniel also submitted a December 7, 2009 medical report from Parkland, which the ALJ quoted in her decision.  This report, from a CT angiogram, notes the presence of the abdominal aortic aneurysm, an aneurysmal dilation of the right common iliac artery, marginal aneurysmal dilation of the left common iliac artery, and 40-45% narrowing in the left and right internal iliac arteries.  But like the report from Presbyterian Hospital and the prior report from Parkland, this report does not indicate any specific limitations on McDaniel's ability to work.

McDaniel also submitted a Medical Release/Physician's Statement from Lynne Kirk, M.D. ("Dr. Kirk"), in which she concluded on January 14, 2010 that McDaniel can work full time for 40 hours each week.  Dr. Kirk also opined that McDaniel could sit, stand, and walk for 8 of 8 hours per day; climb 4 of 8 hours per day; kneel/squat, bend/stoop, push/pull, and lift/carry for 2 of 8 hours per day.  She noted that McDaniel cannot lift or carry objects weighing more than 10 pounds for more than 2 hours per day.  The "primary disabling diagnosis" that she noted was McDaniel's abdominal aortic aneurysm.  *Id.* at 642.  Dr. Kirk nowhere mentioned any limitation as a result of McDaniel's right common iliac artery aneurysm or as a result of atherosclerotic disease in his left common iliac artery and his left and right internal iliac arteries.

The ALJ asked McDaniel during the hearing what limitations he experienced from his aortic aneurysm.  He responded that he had been told to limit his "exertional labor" and "psychological stress," but that he had only "chose[n]" to undertake these limitations for about the past year.  *Id*. at 77-78.  McDaniel explained that his aneurysm had been discovered in 2006, that he had been monitored since then, and that, during the past eight months, his aneurysm had enlarged to the point that his doctors had begun to discuss the possibility of "stints or a bypass operation."  *Id*. at 78-79.  He conceded, however, that he experienced no symptoms related to the aneurysm.  *Id.* at 82.

Based on the medical evidence and McDaniel's hearing testimony, the court concludes that the ALJ's RFC determination for the period May 25, 2007 through March 31, 2008 is supported by substantial evidence.  The medical reports from Presbyterian Hospital do not, as McDaniel suggests, establish any limitation on his ability to lift light or possibly medium weight or otherwise restrict his ability to work.  Even assuming the findings in his 2009 Parkland medical records can be extrapolated backward to the pre-March 31, 2008 time period, these records, as the ALJ found, do not suggest any limitation on McDaniel's ability to lift weight or perform a limited range of light work.  Even if the court assumes *arguendo* that McDaniel established at his hearing that his atherosclerotic disease and various aneurysms currently limited his ability to engage in "exertional labor" or jobs with "psychological stress," *id*. at 77-78, McDaniel did not adduce evidence that these limitations dated back more than one year prior to the hearing.

- 9 -

Accordingly, the court holds that substantial evidence supports the ALJ's findings regarding McDaniel's RFC, including her finding, as applied to the May 25, 2007 to March 31, 2008 time period, that McDaniel "has no real functional limitations shown related to the aneurysm that would prevent light or possibl[y] even medium weights." *Id*. at 23.

B

McDaniel's contention that the ALJ failed to consider the results of a December 21, 2007 abdominal CT examination at Presbyterian Hospital, an October 31, 2009 ultrasound examination of his abdominal aorta at Parkland, and a December 7, 2009 CT angiogram of his abdomen and pelvis at Parkland fails because McDaniel has not pointed to any indication that the ALJ did not consider all of the medical evidence in the record.

The ALJ stated in her opinion that she carefully considered "all of the evidence," R. 18, and she noted that her RFC determination was made "[a]fter careful consideration of the *entire record*," *id*. at 22 (emphasis added). The ALJ quoted language from the Presbyterian Hospital medical records and cited generally to the reports from "vascular at Parkland." *Id*. at 23. McDaniel has not shown that, despite the contents of the ALJ's decision, the ALJ did not, in fact, consider all of the evidence in the record.

That the ALJ only quoted certain portions of McDaniel's December 7, 2009 medical report from Parkland and did not address the portion of the Presbyterian Hospital records that noted McDaniel's additional aneurysm does not establish that the ALJ failed to consider this evidence. As the court has previously explained, the ALJ is not required to provide "a

- 10 -

written evaluation of every piece of testimony and evidence submitted." *Nalls v. Astrue*, 2008 WL 5136942, at *6 (N.D. Tex. Dec. 8, 2008) (Fitzwater, C.J.) (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). Even in cases "in which considerable evidence is presented to counter the agency's position," courts require only "a minimal level of articulation of the ALJ's assessment of the evidence." *Id.* (quoting *Zblewski*, 732 F.2d at 79). Here, McDaniel has failed to present any evidence that the right common iliac artery aneurysm or the atherosclerotic disease in his left common iliac artery and both his left and right internal iliac arteries had any impact on his ability to work. Accordingly, the court concludes that the ALJ's written evaluation of the evidence is sufficient and that McDaniel has failed to establish that, in reaching her RFC determination, the ALJ failed to consider the evidence on which McDaniel relies.

C

McDaniel posits in his reply brief that the ALJ was required to obtain expert medical testimony in order to "develop the facts fully and fairly." P. Reply 3 (quoting *Ripley*, 67 F.3d at 557); *see also id.* at 7 (arguing procedural due process requires that Commissioner's decision be reversed and remanded with instructions to assign case to new ALJ to hold hearing to obtain medical testimony on the real functional limitation imposed by his atherosclerotic disease before March 31, 2008). But in *Ripley* (the case on which McDaniel relies) the panel explained that, although the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing, "[t]he absence

of such a statement . . . does not, in itself, make the record incomplete." *Ripley*, 67 F.3d at 557. The panel also held that reversal for the ALJ's failure to fully and fairly develop the record is only appropriate "if the applicant shows that he was prejudiced." *Id.* "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Id.* at 557 n.22 (citing *Kane*, 731 F.2d at 1120). In the present case, however, the record already includes medical evidence of McDaniel's alleged disabilities, including Dr. Kirk's evaluation of his ability to work. Moreover, as explained above, McDaniel's own hearing testimony supports the ALJ's RFC determination. McDaniel has failed to demonstrate that additional evidence or expert testimony would have led the ALJ to reach a different RFC determination.

IV

McDaniel posits that his only argument on appeal is that the Commissioner's decision was not based on substantial evidence because the ALJ failed to consider certain medical evidence in connection with her RFC determination. In his brief, however, he also appears to challenge the ALJ's finding that McDaniel's "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." R. 22. Although McDaniel generally challenges this statement and specifically challenges the ALJ's conclusion that "the claimant has no real functional limitations shown related to the aneurysm that would prevent light or

possible even medium weights," *id.* at 23, he has failed to point to any statement that he made regarding the functional limitations caused by his aneurysm or atherosclerotic disease that the ALJ found not to be credible.[3]   As discussed above, when questioned about the limiting effect of his aortic aneurysm—the only aneurysm he identified during the hearing—McDaniel did not provide the ALJ any evidence or testimony that this aneurysm or any other aneurysm or additional atherosclerotic disease limited his ability to work during the May 25, 2007 to March 31, 2008 time period.  *See id.* at 77-79, 82.

Considering the substantial evidence that supports the ALJ's RFC determination, and the absence of evidence (medical or subjective) that either the second aneurysm in McDaniel's right common iliac artery or the atherosclerotic disease in his left common iliac artery and both his left and right internal iliac arteries would have limited his ability to work during the relevant time period, the ALJ did not commit reversible error in her credibility determination (to the extent she made one).

---

[3]During an August 19, 2008 medical evaluation related to his May 17, 2007 work-related arm injury, McDaniel stated that "he does not feel that he is capable of returning to his pre-injury work but does feel that he is capable of returning to light active work lifting up to 10 pounds."  R. 351.  But as the ALJ recognized, McDaniel made this statement in relation to his arm pain.  Therefore, the statement does not establish any functional limitation as a result of his additional aneurysm or atherosclerotic disease, and substantial evidence supports the ALJ's decision.

\*     \*     \*

Accordingly, for the reasons explained, the Commissioner's decision is AFFIRMED.

December 19, 2011.



SIDNEY A. FITZWATER
CHIEF JUDGE